UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DELVERN DURAN,

Plaintiff, **COMPLAINT**

-against- Index No.:

THE COUNTY OF MONROE, a municipal entity, Jury Trial Demanded.
MONROE COUNTY SHERIFF TODD K.
BAXTER, official capacity as Monroe County
Sheriff; PATRICK O'FLYNN, in his individual and
official capacity as former Monroe County Sheriff;
SERGEANT ZIMMERMAN, IBM # 2307;
DEPUTY SHERIFF KENNEY, IBM # 3155;
LIEUTENANT HAYES, IBM # 2515; "JOHN DOE
No. 1"; CORPORAL ZAMIARA, IBM # 3364;
SERGEANT LATONA, IBM # 2672; "JOHN DOE
No. 2"; DEPUTY SHERIFF WILLIAMS, IBM #
2168; CORPORAL FARSACE, IBM # 1752;
"JOHN DOE NO. 3"; CORPORAL BEVILACQUA,
IBM # 3787; SERGEANT TUMMINELLI, IBM #
3002; "JOHN DOE NO. 4", DEPUTY SHERIFF
BAILEY, IBM # 3510, and DEPUTY SHERIFF
"JOHN DOES" # 5–15 (names and numbers of
whom are unknown at present), MEDICAL
STAFF "RICHARD ROES 1–10" ("RICHARD ROE
Defendants") (names and numbers of whom are
unknown at present),

Defendants.
--------------------------------------------------------------------X

Plaintiff DELVERN DURAN, by his attorneys, ROTH & ROTH, LLP,

complaining of the defendants above-named, respectfully allege as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate the rights of plaintiff,

Delvern Duran, who is disabled and suffers from a seizure disorder. While he was

detained at the Monroe County Jail from May 8, 2016 to May 10, 2016, he suffered several seizures, was refused his anti-seizure medication, and was not provided with adequate medical treatment, supervision, or care by employees of the Monroe County Jail. The employees of the County and the Monroe County Jail were improperly trained in looking after individuals suffering from epilepsy and/or seizure disorders, and through their negligent and/or intentional acts and/or deliberate indifference, caused Mr. Duran to sustain serious and permanent physical injuries by their improper physical contact with him while he was suffering from one or more seizures, and their failure to provide adequate medical care. This Complaint states causes of action under federal and state law for violations of civil rights. It also states causes of action in tort under common law.

## II.  JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and 12102, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions. This Court has jurisdiction over the supplemental claims arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a).

## III.  VENUE

3.      Venue is proper for the United States District Court for the Western District of New York, pursuant to 28 U.S.C. § 1391(a), (b) and (c) and § 1402(b) because the claims arose in this district.

## IV.  JURY DEMAND

4.      Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

5.      Plaintiff, DELVERN DURAN, is a citizen of the United States and a resident of the County of the Monroe, State of New York.

6.      Defendant, THE COUNTY OF MONROE (hereinafter referred to as "COUNTY") is a municipal corporation organized and existing under the laws of New York State.

7.      Defendant COUNTY OF MONROE ("County") is a municipal corporation that, through the Monroe County Sheriff's Office ("MCSO"), operates the Monroe County Jail (the "Jail"). The County is a duly authorized public authority and/or sheriff's office, authorized to perform all functions of a sheriff's office as per the applicable sections of the New York State Criminal Procedure Law, including maintaining and operating the Jail, acting under the direction and supervision of the aforementioned municipal corporation, County of Monroe.

8.      Defendant County was and is a municipal entity created and authorized under the laws of the State of New York.  At all times relevant hereto, defendant County, acting through the MCSO and its senior officials at the central office and Jail, promulgate and implement policies, and are responsible for the supervision of all MCSO matters, including the provision of medical care, and access to medical and other program services mandated by state and federal law and court orders.

Defendant County is responsible for the provision of medical care and services to prisoners confined in the Jail. In addition, at all relevant times, defendant County was responsible for enforcing the rules of the MCSO, and for ensuring that MCSO personnel obeyed the Constitutions and the laws of the United States and the State of New York. The County and the MCSO are also responsible for the appointment, training, supervision, and conduct of all MCSO and Jail personnel, including the defendants herein.

9.     Defendant Monroe County Sheriff TODD K. BAXTER ("Sheriff BAXTER" or "BAXTER") is the current Sheriff for Monroe County, a municipal policymaker and responsible for the policy, practice, supervision, discipline, implementation, and conduct of all Sheriff's Office matters, including the treatment of arrestees and/or pre-trial detainees during the booking process at the Jail, over whom MCSO exercises custodial or other control. Sheriff BAXTER is also responsible for the appointment, training, supervision, and conduct of all of the Sheriff's Office personnel, including Sergeants, Lieutenants, Captains, Corporals and Deputy Sheriffs; and all medical personnel, including doctors and nurses, working at the Jail. Sheriff BAXTER's principal place of business is 130 Plymouth Avenue South, Rochester, New York 14614. Sheriff BAXTER is sued in his individual and official capacities.

10.     Defendant former Monroe County Sheriff PATRICK O'FLYNN ("Sheriff O'FLYNN" or "O'FLYNN") was at all times relevant herein the Sheriff for Monroe County, acting under color of law, and according to his official duties. At all times

relevant to the conduct of the Monroe County Sheriff's Office, he was a municipal policymaker and responsible for the policy, practice, supervision, discipline, implementation, and conduct of all Sheriff's Office matters, including the treatment of arrestees and/or pre-trial detainees during the booking process at the Jail, over whom MCSO exercises custodial or other control. Sheriff O'FLYNN was also responsible for the appointment, training, supervision, and conduct of all of the Sheriff's Office personnel, including Sergeants, Lieutenants, Captains, Corporals and Deputy Sheriffs; and all medical personnel, including doctors and nurses, working at the Jail. Sheriff O'FLYNN's principal place of business is 130 Plymouth Avenue South, Rochester, New York 14614. Sheriff O'FLYNN is sued in his individual and official capacities.

11.    Upon information and belief, at all times hereinafter mentioned, Defendant SERGEANT ZIMMERMAN, IBM # 2307 ("ZIMMERMAN"), DEPUTY SHERIFF KENNEY, IBM # 3155 ("KENNEY"), LIEUTENANT HAYES, IBM # 2515 ("HAYES"), "JOHN DOE No. 1"[1], CORPORAL ZAMIARA, IBM # 3364 "ZAMIARA"), SERGEANT LATONA, IBM # 2672 ("LATONA"), "JOHN DOE No. 2"[2], DEPUTY SHERIFF WILLIAMS, IBM # 2168 ("WILLIAMS"), CORPORAL FARSACE, IBM #

---

[1] Identified on incident sheet dated May 8, 2016 at 1828, and Incident Sheet dated May 10, 2016 at 0838, produced in the County's FOIL response dated November 20, 2018; however, the name and IBM # are  completely illegible. The IBM # appears to be "8005" but could be a different number. *See* Exhibit "A", page 1, annexed hereto.

[2] Identified on incident sheet dated May 8, 2016 at 1828, produced in the County's FOIL response dated November 20, 2018; however, the name and IBM # are illegible. *See* Exhibit "A", page 1, annexed hereto.

.

1752 ("FARSACE"), "JOHN DOE NO. 3"[3], CORPORAL BEVILACQUA, IBM # 3787 ("BEVILACQUA"), SERGEANT TUMMINELLI, IBM # 3002 ("TUMMINELLI"), "JOHN DOE NO. 4"[4], DEPUTY SHERIFF BAILEY, IBM # 3510 ("BAILEY"), DEPUTY SHERIFF "JOHN DOES" # 5–20" (names and numbers of whom are unknown at present)[5], MEDICAL STAFF "RICHARD ROES 1-10" ("RICHARD ROE Defendants") (names and numbers of whom are unknown at present)[6] (collectively "individual defendants") are and were at all times relevant herein duly sworn sheriff's deputies, employees, medical staff, and agents of the defendant County, O'FLYNN and MCSO and were acting under the supervision of said defendants and according to their official duties. The individual defendants are being sued in their individual and official capacities.

12.    At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the County, O'FLYNN and MCSO, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of

---

[3] Identified on incident sheet dated May 10, 2016 at 0538 hours, produced in the County's response to plaintiff's FOIL request, dated November 20, 2018; however, the name and IBM # are illegible. *See* Exhibit "A", page 2, annexed hereto.

[4] Identified on incident sheet dated May 10, 2016 at 0959 hours, produced in the County's response to plaintiff's FOIL request, dated November 20, 2018; however, the name and IBM# are illegible. *See* Exhibit "A", page 4, annexed hereto.

[5] Depicted and identified in the videos that were produced with the County's response to plaintiff's FOIL request, dated November 20, 2018 FOIL, and in the redacted pages of the County's FOIL response dated November 20, 2018, but only the pages that are related to the incident at issue herein, which occurred from May 8, 2016 to May 10, 2018.

[6] Depicted and identified in the videos that were produced with the County's response to plaintiff's FOIL request, dated November 20, 2018, and in the redacted pages of the County's FOIL response dated November 20, 2018, but only the pages that are related to the incident at issue herein, which occurred from May 8, 2016 to May 10, 2018.

the County, O'FLYNN and MCSO at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the County, O'FLYNN and MCSO and incidental to the lawful pursuit of their duties as officers, employees and agents of the County, O'FLYNN and MCSO.

13.     The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with deliberate indifference, with malice, and in gross disregard of plaintiff's rights.

14.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence in support to one another

15.     That Plaintiff has met all the conditions precedents to the commencement of this action.

## STATEMENT OF FACTS

### Background

16.     Defendant County maintains facilities for the incarceration of pre-trial detainees at the Monroe County Jail.

17.     At some time before May 8, 2016, Defendant County contracted with the City of Rochester to house arrestees and/or pre-trial detainees at the Monroe County Jail.

18.     Defendant County manages the Monroe County Jail.

19.     Inmates and/or detainees incarcerated at Monroe County Jail have a right of access to medical care.

20.    Inmates and/or detainees incarcerated at Monroe County Jail have a right not to be discriminated against based on their actual or perceived disability.

21.    Defendant County, by and through its agents, servants, and/or employees, held themselves out as being skillful and competent in diagnosing and treating medical conditions, diseases, ailments, pain and physical conditions.

22.    Defendant County, by and through its agents, servants, and/or employees, took on the responsibility to medically screen all inmates coming into its custody and control.

23.    On or about May 8, 2016, Plaintiff Mr. Duran was taken into custody and under care and control of the defendants.

24.    This action falls within one or more of the exceptions contained in CPLR § 1602.

### The Mistreatment and Injuries to Mr. Duran

25.    On May 8, 2016, Mr. Duran was admitted to MCSO custody for allegedly driving with a suspended license. For three days, Mr. Duran was housed at the Jail.

26.    When Mr. Duran was admitted to the Jail, he informed several of the individual defendants that his epileptic condition required a strict medication schedule, and that his then girlfriend, Angela, would bring his medication to the jail.

27.    On May 8, 2016, shortly after Mr. Duran was taken into MSCO custody, his then girlfriend Angela arrived at the jail and informed jail staff that Mr. Duran's epileptic condition required a strict medication schedule, and if he did not take his

medication, he would suffer debilitating seizures. Mr. Duran's girlfriend attempted to give jail personnel Mr. Duran's anti-seizure medication, but the jail personnel refused to accept the medication.

28. While incarcerated, Mr. Duran suffered several epileptic seizures. Mr. Duran was therefore in obvious need of specialized medical treatment. Nonetheless, from the moment he arrived in MCSO custody, Mr. Duran's most basic medical needs were ignored.

29. On May 8, 2016, Mr. Duran suffered a seizure while he was in a cell in the Jail's booking area.

30. When Mr. Duran recovered from his seizure, several individual defendants, including medical personnel and sheriff's deputies, were standing around him inside of the cell and immediately outside of the cell.

31. Upon information and belief, while he was having the seizure, several individual defendants entered Mr. Duran's cell and attempted to physically restrain him, causing him to suffer a broken toe.

32. Upon information and belief, the individual defendants were improperly trained in identifying, caring for and treating individuals suffering from epilepsy and other seizure disorders.

33. Upon information and belief, the defendants' actions in restraining Mr. Duran caused him to break his toe and to hit his head on the floor and suffer head injuries.

34. Upon information and belief, Mr. Duran requested medical attention and

complained of pain to his head, back and toe, however, he was not provided adequate medical treatment.

35.    Upon information and belief, Mr. Duran also requested he be administered his anti-seizure medication to prevent him from suffering another seizure, but defendants refused to administer his medication.

36.    Upon information and belief, despite knowing that Mr. Duran had epilepsy and had already suffered a seizure, Mr. Duran was not transferred to the hospital to obtain medication for his seizures.

37.    Upon information and belief, despite knowing that Mr. Duran had epilepsy and had already suffered a seizure, Mr. Duran was not transferred to a medical observation cell.

38.    The next morning, on May 9, 2016, Mr. Duran was transported to court for arraignment.

39.    Upon information and belief, on May 9, 2016, after returning from court, Mr. Duran spoke with a nurse. Mr. Duran explained he was epileptic and requested his anti-seizure medication.

40.    Mr. Duran was not provided with his anti-seizure medication.

41.    Thereafter, on May 9, 2016 at approximately 2:37 p.m., while laying on chairs in the booking area, Mr. Duran suffered another seizure.

42.    Thereafter, upon information and belief, Mr. Duran was transported to Strong Memorial Hospital at approximately 3:00 p.m. on May 9, 2016.

43.    Mr. Duran was provided medication and discharged shortly thereafter.

44.    Mr. Duran was placed in a cell at the jail where he was supposed to be under medical observation by the defendants.

45.    Upon information and belief, after being placed in the observation cell, on May 10, 2016, Mr. Duran suffered at least additional seizures, but was not provided adequate medical attention.

46.    Upon information and belief, during one of the May 10, 2016 seizures, Mr. Duran defecated and urinated on himself, and struck his head on the ground.

47.    Numerous defendants responded to Mr. Duran's cell, and, upon information and belief, were aware that he urinated and defecated on himself.

48.    Upon information and belief, Mr. Duran requested a change of clothes.

49.    Upon information and belief, defendants refused Mr. Duran's request for a change of clothes. As a result, Mr. Duran was forced to sit in the cell for many hours in his own feces and urine.

50.    Upon information and belief, during one of the May 10, 2016 seizures, Mr. Duran suffered injuries to his right arm and/or shoulder; however, he was not provided adequate medical treatment for his injuries.

51.    As a result of Defendants' actions, Mr. Duran suffered physical injuries, including: seizures, a broken toe, injuries to his lower back, injuries to his right arm and/or shoulder, injuries to his head, and headaches.

52.    Mr. Duran also suffered severe humiliation, fear of the recurring seizures due to being denied necessary seizure medication  and emotional distress when the defendants refused to provide him his medication as well as the refusal to provide

him with a change of clothing after he defecated and urinated on himself during one of the seizures.

53.    Defendants acted collectively and jointly to deprive Mr. Duran of his rights.

54.    As a direct and proximate result of the joint and several wrongful acts of defendants in failing to provide adequate medical treatment and care, Mr. Duran was deprived of his rights under the laws of the State of New York and the United States Constitution.

55.    Defendants caused Mr. Duran to suffer severe physical and mental injuries, as hereinbefore described.

**FIRST CAUSE OF ACTION**
**(Negligent Hiring, Training, Retention and Supervision of Employees; Against O'FLYNN)**

56.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

57.    Defendant O'Flynn owed a duty of care to Mr. Duran to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to Mr. Duran or to those in a like situation would probably result from the foregoing conduct.

58.    Upon information and belief, all individual defendants were unfit and incompetent for their positions.

59.    O'Flynn knew or should have known through the exercise of reasonable diligence that the Individual Defendants that it employed were potentially dangerous. O'Flynn's negligence in screening, hiring, training, disciplining, and

retaining these defendants proximately caused plaintiff's injuries.

60.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
### (Denial of Constitutional Rights under 42 U.S.C. § 1983; Against All Defendants)

61.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

62.    By reason of the foregoing, and by confining Mr. Duran to his cell, denying him access to adequate medical care, failing to provide medical treatment, and/or exhibiting deliberate indifference to Mr. Duran's rights by not acting on information which indicated that unconstitutional acts were occurring, the Defendants deprived Mr. Duran of rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. The Defendants acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of serious injury to Mr. Duran that shocks the conscience. As a direct and proximate result of these violations of Mr. Duran's constitutional rights, he suffered the damages hereinbefore alleged.

63.    O'FLYNN and the COUNTY, through supervisory officials at the Jail, knew that the pattern of abuse and neglect against inmates that required heightened supervision because of medical issues and/or disabilities, existed at the Monroe County Jail and in its medical observation units prior to and including the time of

Mr. Duran's mistreatment and injuries. They created or allowed the continuance of the custom under which inmates that required heightened supervision because of medical issues and/or disabilities were placed in solitary confinement and/or in observation rooms and deprived of adequate medical care. Their failure to take measures to curb this pattern of abuse and neglect constituted acquiescence in the known unlawful behavior of their subordinates and deliberate indifference to the rights and safety of the inmates in their care and custody, including Mr. Duran. O'FLYNN and the COUNTY'S conduct, through supervisory jail employees, was a substantial factor in the continuation of such abuse and neglect and a proximate cause of the constitutional violations alleged in this complaint and of Mr. Duran's resultant damages, hereinbefore alleged.

64. The individual defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as County and Jail deputies, officers, agents, employees, and/or contracted personnel. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Said Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Duran of his constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

65. As set forth above, Defendants denied Plaintiff the right to the full and equal protection of all laws and proceedings for the security of persons and property as is enjoyed by non-disabled citizens. Defendant's actions violate 42 U.S.C. §1983 and

the laws of the State of New York.

66.    Specifically, Defendants failed to provide Mr. Duran his anti-seizure medication, failed to care for him in a manner to reduce his risk of injury during seizures, provided him inadequate care during his seizures, failed to provide adequate treatment for his medical injuries, and failed to accommodate his seizure disorder.

67.    The County, O'Flynn and other senior County and MCSO officials knew that there was a pattern of abuse and deliberate indifference to the rights and safety of Jail inmates and pre-trial detainees suffering from serious medical conditions, prior to and including the time of Mr. Duran's mistreatment. They created or allowed the continuance of the custom under which inmates suffering from serious medical conditions were illegally and excessively placed in solitary confinement and deprived of adequate medical care; and/or otherwise not adequately observed or provided necessary medications. Their failure to take measures to curb this pattern of abuse and neglect constituted acquiescence in the known unlawful behavior of their subordinates and deliberate indifference to the rights and safety of the inmates in their care and custody, including Mr. Duran. The conduct of the County, O'Flynn and other senior County and MCSO officials was a substantial factor in the continuation of such abuse and neglect and a proximate cause of the constitutional violations alleged in this complaint and of Mr. Duran's resultant damages, hereinbefore alleged.

68.    The Individual Defendants acted under pretense and color of state law and in

their individual and official capacities and within the scope of their respective employments as officers, agents, employees, and/or contracted personnel of the County and/or the Sheriff. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Said Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Duran of his constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

69.     Defendants County and O'Flynn, through the MCSO and the Jail, through its agents, officers and employees, acting under the pretense and color of law, permitted, tolerated, and were deliberately indifferent to a pattern and practice of abuse and neglect at the Monroe County Jail, as described above, by officers, employees, agents, and contracted personnel at the time of Mr. Duran's mistreatment. This widespread tolerance of abuse and neglect constituted municipal policy, practice, and custom, and was a proximate cause of Mr. Duran's mistreatment and resultant damages, hereinbefore alleged.

70.     By pursuing, permitting, tolerating, and sanctioning persistent and widespread policies, practices, and customs pursuant to which Mr. Duran was abused and neglected, O'Flynn, the County and the MCSO have deprived Mr. Duran of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

71.     As the direct and immediate result of the foregoing conduct, Plaintiff has

been caused to suffer damages involving extreme and grievous physical, emotional and psychological trauma, all to his detriment.

72.    The actions described herein clearly violate established statutory and constitutional norms and it was not objectively reasonable for the officers involved to have believed their conduct could have been legal.

## THIRD CAUSE OF ACTION
### (Discrimination based on Disability under State and Federal Law; All Defendants)

73.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

74.    42 U.S.C. §12131 et seq., the Americans with Disabilities Act of 1990, The Rehabilitation Act 29 U.S.C. § 794, and Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* prohibit discrimination by jail officials and sheriff's deputies against those with seizure disorders.

75.    Similarly, The Rehabilitation Act pursuant to § 504 provides, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794.

76.    Plaintiff is disabled and has epilepsy, a severe seizure disorder, and is a qualified individual with a disability under the law.

77.    Defendant County is a public entity that receives federal funding and is subject to Title II of the ADA and the Rehabilitation Act.

78.     Moreover, defendants and those who interacted with plaintiff Mr. Duran regarded him as being disabled as they knew he suffered from a seizure disorder.

79.     Plaintiff was entitled to the same law enforcement and correctional services that defendants provide to other non-disabled persons.

80.     Specifically, plaintiff Mr. Duran was entitled to the benefit of a lawful exercise of police powers, including but not limited to the right not to be subjected to an unlawful discrimination.

81.     Defendants discriminated against plaintiff Mr. Duran solely because of his disability and failed to provide reasonable accommodation.

82.     Defendants' actions were taken under circumstances giving rise to an inference of discrimination. Defendant intentionally discriminated against plaintiff and/or was deliberately indifferent towards Plaintiff's rights.

83.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse consequences. Plaintiff was caused to endure severe extreme humiliation, emotional pain and trauma, all to his detriment.

### FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983: Deliberate Indifference to Serious Medical Needs/Failure to Treat: All Defendants)

84.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

85.     Defendants had a duty under the Constitution of the United States of America to medically treat inmates and provide adequate medical care to those inmates, including plaintiff Mr. Duran, in the custody of the MCSO at the Jail.

Defendants had a duty under the Fourth and Fourteenth Amendments to treat pre-trial detainees and provide medical treatment and not to be deliberately indifferent to the known serious medical needs of pre-trial detainees in the custody of the MCSO at the Jail.

86.    In response to Plaintiff informing numerous individual defendants that he was epileptic and required his anti-seizure medication, one or more individual defendants denied his requests for medical treatment.

87.    Because defendants refused to provide him with his anti-seizure medication while in custody, he was caused to suffer several seizures, extreme physical pain, physical injuries, and emotional and psychological damages.

88.    Plaitniff was not otherwise provided an opportunity to receive adequate medical treatment.

89.    While incarcerated at the Jail, Mr. Duran suffered from serious medical need to wit, the urgent need for his anti-seizure medication, the need for urgent care for his head, toe, and body, and the need to urgently be treated by a doctor, and/or the need to be timely transferred to the hospital for treatment of his epilepsy, which, if not properly and timely attended to, would and did leave Mr. Duran with serious injuries.

90.    Defendant County failed to adequately treat Mr. Duran. Defendant County was aware of Mr. Duran's medical needs and the need to urgently treat his epilepsy and the serious injuries caused by the individual defendants in improperly attending to Mr. Duran during his epileptic seizures, which would have been

obvious to a lay person and which, if not properly and timely attended to, would leave Mr. Duran with serious injuries. Defendant was aware of the need for medical treatment and emergency treatment of inmates, including Mr. Duran, and that timely and appropriate medical care has been an issue at the Monroe County Jail.

91.    Mr. Duran's obvious and severe injuries and his need for treatment of his epileptic seizures was known or knowable to Defendants at all times material to this action. Despite their knowledge of the serious risk to Mr. Duran's health, Defendants intentionally or through deliberate indifference failed or refused to medically treat or provide Mr. Duran with adequate and timely medical care. Had Defendants ensured that Mr. Duran was properly treated in a timely manner, his injuries could have been avoided.

92.    As stated more specifically, in part, above, defendants acted with deliberate indifference as to Mr. Duran's serious medical condition when they failed to treat him and/or provide medical treatment to him, despite having actual knowledge that Mr. Duran needed medical treatment and attention and/or despite the fact that they should have been aware of this, and Mr. Duran suffered serious injuries as a result, as described in part more fully above.

93.    Defendants misused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violation of Mr. Duran's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. § 1983.

94.    Upon information and belief, defendants acted with deliberate indifference in

the failure to implement a policy and/or implementing an inadequate policy for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights. Defendants also failed to treat Mr. Duran and/or provide him with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Mr. Duran.

95.     Upon information and belief, defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy regarding the response time for inmate medical treatment for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights. Defendants also failed to treat Mr. Duran and/or provide him with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Mr. Duran.

96.     Plaintiff was damaged by defendants' deliberate indifference of the.

97.     As a result of defendants' impermissible conduct, Plaintiff demands judgment against defendants in a sum of money to be determined at trial.

98.     Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiffs constitutional rights.

99.     By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

## <u>PRAYERS FOR RELIEF</u>

**WHEREFORE,** Plaintiff respectfully requests judgment against

defendants as follows:

a.  awarding compensatory damages in an amount to be determined at

trial;

b.  awarding punitive damages against the Individual Defendants in an

amount to be determined at trial;

c.  awarding plaintiff reasonable attorneys' fees and costs under 42

U.S.C. § 1988; and

d.  directing such other and further relief as the Court may deem just

and proper, together with attorneys' fees, interest, costs, and

disbursements of this action.

Dated:    New York, New York
          May 7, 2019

                                    ROTH & ROTH, LLP


                                    ___~//s//~_____

                                    ELLIOT D. SHIELDS
                                    *Attorneys for Plaintiff*
                                    192 Lexington Ave, Suite 802
                                    New York, New York 10016
                                    Ph: (212) 425-1020